The Syracuse Water Company, Appellant, *v.* The City of Syracuse, Respondent.

The Syracuse Water Company, Appellant, *v.* The City of Syracuse et al., Respondents.

Grants of franchises by the state are to be so strictly construed as to operate as a surrender of the sovereignty no further than is expressly declared by the terms of the grant; the grantee takes nothing in that respect by inference.

Except so far, therefore, as, by the terms of the grant, the exercise of the franchise rights granted is made exclusive, the legislative power is reserved to grant and permit the exercise of competing and rival powers and privileges, however injurious they may be to those previously granted.

Neither the charter of the plaintiff (Chap. 224, Laws of 1849), nor the acts of 1821 (Chap. 176), 1825 (Chap. 124, § 11) and 1834 (Chap. 151), in reference to supplying the former village, now city of Syracuse, with water, to the rights granted by which plaintiff has succeeded, give to it the exclusive right to supply the city with water, or deny to the state the right to make other similar grants for that purpose.

So, also, the facts that, under plaintiff's charter (§ 16), it is required, when requested, to furnish water to the city for the extinguishment of fires, etc., and that such request has been made, and contracts entered into for that purpose between plaintiff and the city, do not constitute a contract binding the city perpetually while the plaintiff retains its charter, and preventing the city from making contracts with others.

The municipal corporation could bind itself by such contracts only as it was authorized by statute to make. It has no power to grant exclusive privileges to put mains, pipes and hydrants in its streets, nor can it lawfully, by contract, deny to itself the right to exercise the legislative powers vested in its common council.

In dealing with municipal corporations parties are chargeable with knowledge of their powers.

Accordingly, *held*, that the city had authority to authorize defendant, the C. C. W. W. Co., incorporated under the act of 1880 (Laws of 1885, chap. 85), to construct, maintain and operate water-works in the city, and to enter into a contract with said company for the use of water by the city, through hydrants furnished by the company; that, by force of the grant to the plaintiff, it had the right to maintain its structures, and the privilege of supplying all the water the city or its inhabitants may take from it, but had not the exclusive right.

*In re U. F. Co.* (98 N. Y. 139) distinguished.

Also, *held,* that the city was not required, before it could avail itself of other means than those provided by plaintiff for obtaining a water supply, to resume and take plaintiff's property and powers in the manner provided by its charter (§§ 26, 29).

(Argued June 14, 1889; decided October 8, 1889.)

APPEALS from judgments of the General Term of the Supreme Court in the fourth judicial department, entered upon orders made April 20, 1886, which affirmed judgments in favor of defendants, entered upon decisions of the court on trial at Special Term.

The first action was brought to restrain the defendant from granting to the Central City Water-Works Company the right to place pipes or other structures in the city of Syracuse, with a view to supply it with water.

The purpose of the second action was to restrain each of the defendants from exercising any right or privilege in that respect which the city, through its common council, had, by resolution, sought to give the defendant company, and which the latter had assumed to take.

The facts, so far as material, are stated in the opinion.

*George F. Comstock* and *William F. Tracy* for appellant. By chapter 176 of Laws of 1821, a general franchise was granted by the legislature to the trustees of the Syracuse water-works to supply the village of Syracuse and the inhabitants thereof with wholesome water from the springs designated in the act, and from any other source whatever. (*Eyston* v. *Studd,* 2 Plow. 465; *People* v. *Central R. R. Co.,* 13 N. Y. 78; *Holmes* v. *Carley,* 31 id. 289; *Pillow* v. *Bushnell,* 5 Barb. 156; *Chase* v. *Central R. R. Co.,* 26 N. Y. 523; *Jones* v. *Russell,* 2 T. & C. 538; *People* v. *Wood,* 71 N. Y. 371, 374; *Constantine* v. *Van Winkle,* 6 Hill, 177; *People* v. *Davenport,* 91 N. Y. 585; *U. S.* v. *Fisher,* 2 Cranch, 358; *Brinckerhoff* v. *Bostwick,* 23 Hun, 237, 239; *Jones* v. *Sheldon,* 50 N. Y. 477; *Jackson* v. *Gilchrist,* 15 Johns. 89, 116; *Beebe* v. *Griffing,* 14 N. Y. 235; *In re Hudson's Sav. Inst.,* 5 Hun, 612; *U. S.* v. *Palmer,* 3 Wheat. 610; *State* v. *Stephen-*

*son*, 2 Bailey, 334; *Bailey's Case*, 1 Leach Cas. 442; *People*
v. *Draper*, 15 N. Y. 532, 558; *People* v. *Utica Ins. Co.*, 15
Johns. 358, 394; *Rogers* v. *Bradshaw*, 20 id. 735, 743; *Smith*
v. *People*, 47 N. Y. 330, 339; *Rexford* v. *Knight*, 15 Barb.
627; *Dresser* v. *Brooks*, 3 id. 429, 451.) Upon the convey-
ance to Teall an inviolable contract was made with him for
all time to come that he should have the right to supply the
village and its inhabitants with water, and that the village
would not exercise any rights on that subject by contract or
otherwise, except by resumption. (*State* v. *Allis*, 18 Ark. 289;
*Rogers* v. *Kneeland*, 10 Wend. 218; 13 id. 114; *People* v.
*Fitzsimmons*, 68 N. Y. 514; *N. O. G. Co.* v. *L. Light Co.*,
115 U. S. 650, 659; *N. O. W. W. Co.* v. *Rivers*, Id. 674; *L. G.
Co.* v. *C. G. Co.*, Id. 683; *S. T. W. W.* v. *N. O. W. W. Co.*,
120 id. 64; Dillon on Mun. Corp. [3d ed.] § 691; *C. C. G. L.
Co.* v. *N. O. G. L. Co.*, 27 La. Ann. 138, 147; *State* v. *C. G.
Co.*, 18 Ohio St. 262; *Boston* v. *Richardson*, 13 Allen, 146;
*W. Mfg. Co.* v. *Bk. B. C.*, 119 U. S. 191; *Cin. R. R. Co.* v.
*Carthage*, 36 Ohio St. 631; *Town of Pawlet* v. *Clark*,
9 Cranch, 292; *Terrett* v. *Taylor*, Id. 43; *Gilbert* v. *U. S.*,
1 Ct. of Claims, 28; *Davis* v. *Gray*, 16 Wall. 203; *Hall* v.
*Wisconsin*, 103 U. S. 5; *Phillips* v. *Thompson*, 1 Johns. Ch.
131, 144; *Gifford* v. *First Presb. Ch.*, 56 Barb. 114; *Ripley*
v. *Larmouth*, Id. 21; *Marvin* v. *Stone*, 2 Cow. 781; *White* v.
*Hoyt*, 73 N. Y. 505; *Blossom* v. *Griffin*, 13 id. 569; *Spring-
stein* v. *Samson*, 32 id. 703; *Fletcher* v. *Peck*, 6 Cranch, 87;
*Topliff* v. *Topliff*, 122 U. S. 121.) Notwithstanding the fran-
chise is exclusive the state still has power to appropriate it by
virtue of its right of eminent domain. (Cooley on Const.
Lim. [5th ed.] § 341.) After the incorporation of the city in
1847 it had no power to supply itself with water, except
through Teall and his assigns, and it could not grant such
franchise to any other person. (*N. O. Co.* v. *L. L. Co.*, 115
U. S. 650, 659; *State* v. *C. G. Co.*, 18 Ohio St. 262.) Statutes
shall not be construed so as to interfere with existing rights
and liabilities, unless they expressly declare such intention.

(*Maine* v. *Green*, 32 Barb. 448; *Sayer* v. *Wisner*, 8 Wend. 661; *Wood* v. *Oakley*, 11 Paige, 400; *Dash* v. *Van Kleeck*, 7 Johns. 477; *Bagley* v. *Rampacker*, 5 Duer, 183; *People* v. *Hyde*, 89 N. Y. 18; *Smith* v. *People*, 47 id. 330; *Westervelt* v. *Gregg*, 12 id. 202; *Butler* v. *Palmer*, 1 Hill, 324; *Schlegel* v. *A. B. Co.*, 12 Abb. N. C. 280; *Jerome Park* v. *Board of Police*, 11 id. 342; *In re R. W. Comrs.*, 66 N. Y. 422; *In re Evergreens*, 47 id. 217; *McKenna* v. *Edmonston*, 91 id. 231; *In re Central Park*, 50 id. 493; *Whipple* v. *Christian*, 80 id. 523; *People* v. *Davenport*, 91 id. 585; *French* v. *Kirtland*, 1 Paige, 117, 120; *Fort* v. *Burch*, 6 Barb. 60, 73.) If the charters of 1857 and 1885 authorized the city of Syracuse to make the contract in question with the Central City Company, those provisions are void as a law impairing the obligation of a contract. (*Dartmouth Col. Case*, 4 Wheat. 666; *Fletcher* v. *Peck*, 6 Cranch, 87; *Green* v. *Biddle*, 8 Wheat. 2; *C. L. R. R. Co.* v. *Savannah*, 30 Fed. Rep. 646; *Chicago* v. *Sheldon*, 9 Wall. 50; *Fisk* v. *J. P. Jury*, 116 U. S. 131; *Canal Co.* v. *R. R. Co.*, 4 G. & J. 1.) The charter of the plaintiff, standing alone, granted it an exclusive franchise, and any subsequent grant by the legislature to other persons of this franchise was a law impairing the obligation of a contract. (*Fletcher* v. *Peck*, 6 Cranch, 87; *Green* v. *Biddle*, 8 Wheat. 2; *Gordon* v. *App. Tax Ct.*, 3 How. 133.) The plaintiff is entitled to maintain these actions for an injunction upon the grounds that it has an exclusive franchise and also a contract with the city to furnish water for municipal purposes which has been violated by the latter. (*N. O. G. Co.* v. *L. L. Co.*, 115 U. S. 650; *Boyce* v. *Grundy*, 3 Pet. 210; *Wylie* v. *Coxe*, 15 How. [U. S.] 415; *Garrison* v. *M. Ins. Co.*, 19 id. 312; *May* v. *Le Claire*, 11 Wall. 217; *Watson* v. *Sutherland*, 5 id. 74; 3 Pom. Eq. Juris. § 1341; *B. C. L. Co.*, 114 Penn. St. 574; *C. & A. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 24 Fed. Rep. 516; *Sugar Mfg. Co.* v. *Union Co.*, 6 Fish. 480; *Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423; *P. R. R. Co.* v. *S. L. R. R. Co.*, 118 U. S. 290; *Truscott* v. *King*, 6 N. Y. 147; *Bank of Utica* v. *Mayor, etc.*, 4 Paige, 399; *Fulton*

*Bank* v. *S. C. Co.*, Id. 127; *People* v. *Mayor*, 32 Barb. 102; *Davis* v. *Mayor*, 14 N. Y. 506; *People* v. *Sturtevant*, 9 id. 264.) The franchise, although necessarily exclusive in a sense which is perfectly unobjectionable, besides necessary, was not exclusive in the odious sense of the "monopolies," against which the constitutional amendment of 1875 was directed. (*Union Ferry Case*, 98 N. Y. 139; 5 Story's Eq. Juris. § 1569; 3 Kent's Com. 590; 2 id. 683.)

*Louis Marshall* for respondents: Public grants are to be construed strictly against the grantee, and legislative acts granting franchises to corporations are to be construed strictly according to their terms, the grantee in such acts takes nothing by implication, either as against the power making the grant or against other corporations or individuals. (*Stourbridge Canal* v. *Wheeley*, 2 B. & A. 792, 793; *Comrs.* v. *E. & N. E. R. R. Co.*, 27 Pa. St. 339; *Parker* v. *G. W. R. R. Co.*, 7 M. & G. 253; *T. C. Co.* v. *T. R. R. Co.*; 11 Leigh, 42; *E. T. B. Co.* v. *H. & N. H. R. R. Co.*, 17 Conn. 454; *B. Co.* v. *H. L. & I. Co.*, 13 N. J. Eq. 81; *K. D. Co.* v. *La Marche*, 8 B. & C. 42; *Allegany* v. *O. & P. R. R. Co.*, 26 Penn. St. 355; *B. & L. R. R. Co.* v. *B. R. R. Co.*, 5 Cush. 375; *Thorpe* v. *R. R. R. Co.*, 27 Vt. 140; *U. B. Co.* v. *Spaulding*, 1 East. Rep. 345; *L. W. Co.'s Appeal*, 102 Penn. St. 515; 11 Peters, 552, 553; *Billings* v. *Prov. Bk.*, 4 id. 514; *United States* v. *Arredondo*, 6 id. 736; *Perrine* v. *C. & D. C. Co.*, 9 How. [U. S.] 172; *R. R. R. Co.* v. *L. R. R. Co.*, 13 id. 71; *Rennock* v. *Coe*, 23 id. 117; *F. Co.* v. *Hyde Park*, 97 U. S. 666; *Newton* v. *Comrs.*, 100 id. 651; *Rice* v. *M. & N. W. R. R. Co.*, 1 Black. 358; *O. L. & T. Co.* v. *Debolt*, 16 How. 435; *Railway* v. *Philadelphia*, 101 U. S. 540; *M. B. Co.* v. *U. & S. R. R. Co.*, 6 Paige, 554; *C. B. Co.* v. *Magee*, 2 id. 116; *Sprague* v. *Birdsall*, 2 Cow. 419; *Wright* v. *Briggs*, 2 Hill, 77; *Sharpe* v. *Speir*, 4 id. 76; *Newell* v. *Wheeler*, 48 N. Y. 486; *O. F. B. Co.* v. *Fish*, 1 Barb. Ch. 547; *Thompson* v. *N. Y. & H. R. R. Co.*, 3 Sandf. Ch. 625; *A & C. P. R. Co.* v. *Douglass*, 9 N. Y. 444; *F. P. B. Co.* v. *Smith*, 30 id. 44;

*S. A. R. R. Co.* v. *Kerr*, 45 Barb. 138; *S. A. R. R. Co.* v. *N. Y. E. R. R.*, 3 Abb. N. C. 347; *S. A. R. R. Co.* v. *G. E. R. Co.*, 3 id. 872; *In re Matter N. Y. E. R. Co.*, 70 N. Y. 327; *Mayor, etc.* v. *B. & S. A. R. Co.*, 97 id. 275; *Prover* v. *Village of Athens*, 99 id. 592; *Dermott* v. *State*, id. 101, 107; *N. O. W. Co.* v. *Rivers*, 115 U. S. 674; *People ex rel.* v. *Mulholland*, 19 Hun, 548; 82 N. Y. 324; *Stein* v. *B. W. S. Co.*, 34 Fed. Rep. 145.) The defendant, the city of Syracuse, is not estopped by any act performed by it from granting to the defendant, the Central City Water-Works Company, the right to construct water-works within the city for the purpose of supplying the corporation and the inhabitants of Syracuse with water; neither is the latter estopped from accepting such a franchise. (*Brown* v. *Bowen*, 30 N. Y. 519; *Grandolf* v. *Appleton*, 40 id. 533; *Jewett* v. *Miller*, 10 id. 402; *Van Duzen* v. *Sweet*, 51 id. 378; *White* v. *Ashton*, Id. 280; *People* v. *Bk. N. A.*, 75 id. 547.) Even though the city or village of Syracuse had granted to the plaintiff an exclusive right to use the streets of the city for the purpose of laying down water mains therein, such grant would be void, on the ground that it is *ultra vires*. (*State* v. *C. G. Co.*, 18 O. 262; *N. G. L. Co.* v. *N. C. G. L. Co.*, 25 Conn. 19; *G. L. Co.* v. *City of Saginaw*, 28 Fed. Rep. 534; *Stein* v. *B. W. S. Co.*, 34 id. 145; Dillon on Mun. Corp. § 89; *Minturn* v. *Larue*, 23 How. [U. S.] 435; *Wright* v. *Nagle*, 101 U. S. 791; *R. C. G. L. Co.* v. *Middletown*, 59 N. Y. 228; *Logan* v. *Payne*, 43 Iowa, 524; *J. C. H. R. R. Co.* v. *R. T. Co.*, 24 Fed. Rep. 306; *M. F. G. Co.'s Appeal*, 4 Atl. Rep. 733; *City of Brenham* v. *B. W. Co.*, 4 S. W. Rep. 143; 67 Tex. 542; *Gale* v. *Kalamazoo*, 23 Mich. 344.) Even in the absence of statutory permission the municipal authorities, by virtue of their general powers and their right to regulate the use of the streets of the city, would have the right of permitting the Central City Water-Works Company to lay its mains in the streets of the city. (*Smith* v. *G. L. Co.*, 12 How. Pr. 187; Dillon on Mun. Corp. [2d ed.] §§ 546, 547, 551; *State* v. *C. G. Co.*, 18 O. St. 262.) A court of equity

will not interfere by injunction to restrain a municipal cor-
poration from granting permission to a corporation to perform
corporate acts upon or with respect to its streets or avenues,
where the mere passage of a resolution does not instantly,
without any action or attempt to enforce any right or privi-
lege under it, affect an irremediable private injury. ( *Whitney*
v. *Mayor, etc.*, 2S Barb. 233 ; *People* v. *Mayor, etc.*, 9 Abb.
Pr. 253 ; *Phelps* v. *City of Watertown*, 61 Barb. 121 ; *D. M.
G. Co.* v. *City of Des Moines*, 44 Iowa, 505 ; *People* v.
*Sturtevant*, 9 N. Y. 264 ; *People* v. *Dwyer*, 90 id. 402 ;
*Negus* v. *City of Brooklyn*, 62 How. Pr. 291 ; *T. & B. R.
R. Co.* v. *B., H. T. & W. R. Co.*, 86 N. Y. 107.) A person
who comes into a court of equity must come with clean hands.
( *President, etc.*, v. *Trenton City B. Co.*, 2 Beas. [N. J. Ch.] 46 ;
*T. & B. R. R. Co.* v. *B., H. T. & W. R. Co.*, 86 N. Y.
107, 125.)

BRADLEY, J.   These actions rest upon the charge, made by
the plaintiff, that the defendants were proceeding to invade
its rights.   And the plaintiff alleges that such would be the
effect of the exercise of the privilege which the city of Syracuse
sought to grant to the Central City Water-Works Company,
of providing the means contemplated to supply the city with
water, and in performing the contract made between the
defendants for that purpose.   This charge is founded upon
the claim, asserted by the plaintiff, of the exclusive right or
franchise to furnish the city with water.   The leading inquiry,
therefore, is whether such claim is supported.

The plaintiff was incorporated by Laws of 1849 (chap. 224),
and ever since then it has furnished water to the city and its
inhabitants.   To do that was the purpose of its creation, and
it was fully provided by its charter with the powers essential
to that service, amongst which was that of eminent domain.
The franchise granted to the plaintiff embraced all the powers.
privileges and immunities within the charter, and constituted
a contract between the state and the plaintiff, and in the
exercise of the powers so granted the latter was entitled to

protection. It follows that if, within the franchise granted by the state to the plaintiff was the exclusive right to supply the city of Syracuse with water, the defendants should be enjoined from proceeding, as they are attempting to proceed, to interfere with or impair such right. (*St. Tammany-Water-Works* v. *New Orleans Water-Works*, 120 U. S. 64; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 id. 650; *New Orleans Water-Works Co.* v. *Rivers*, Id. 674; *Louisville Gas Co.* v. *Citizens' Gas Co.*, id. 683.)

By reference to its charter, it appears to have been provided that the plaintiff should, when requested, furnish water to the common council of the city for the extinguishment of fires and other purposes, upon such terms as might be agreed upon between them, and in case they could not agree, either the common council or the plaintiff might apply to the Supreme Court for the appointment of three commissioners, who should prescribe the terms upon which the water should be furnished for the term of three years, and at the expiration of that time, and once in three years thereafter, application in like manner might be made for a new commission for such purpose. (§. 16.) In case the plaintiff should not furnish a sufficient supply of good and wholesome water for the use of the city and the people thereof within two years from the passage of the act, and continue to do so, the common council might give six months written notice to the company to furnish the same, or that application would be made to the Supreme Court for the appointment of five commissioners, and in case the company should continue to neglect to furnish such supply until the expiration of the notice, then the property of the company should be appraised, etc., and upon payment by the common council to the company of the sum so determined, they should become the owners of the property so appraised and paid for, and be possessed of all the powers given by the act to the company. (§. 26.) And, at any time after the expiration of twenty years, the common council should have the right to resume all the property, rights, powers and privileges of the company on paying to it the amount of capital stock actually

paid in and expended in the works, with fifteen per cent annually thereon, deducting therefrom the actual profits annually received by the company, and thereupon it should convey such property to the common council.    (§. 29.)

The provisions of those three sections are thus specifically referred to, because they are relied upon to support the construction and effect claimed for the statute on the part of the plaintiff, and for a like purpose reference is made to section 19, which provides that nothing in the act should be deemed to affect, impair or interfere with the rights, privileges and obligations of the city "derived or imposed by or under the act of the legislature, entitled An act to supply the village of Syracuse, with wholesome water, passed March 27, 1821, or any act subsequently passed amending or altering" it.    And this takes the inquiry back to the act of March 27, 1821, which provided that the freeholders and inhabitants of the village of Syracuse, in the town of Salina, were authorized to take water for the use of the village from any springs on the lands of the People of the state in that town lying eastward of the village, and to carry the same under ground across such lands to the village, subject to the right of the canal commissioners to take the water from such springs to supply the Erie Canal, if their elevation was sufficient to carry water from them into the Rome summit level of the canal.    It also provided for the election annually, by the inhabitants of the village, of three trustees to transact the business in relation to the rights granted by the act to the inhabitants of the village, to bring the water and regulate the manner of its use, and to fix the sums to be paid annually by those using it.

This was the situation until in 1825, when the village was incorporated by an act, which provided that all the rights, property and powers of the trustees of the Syracuse Water-Works should be vested in the corporation, subject to the obligations of such trustees; and that the duties enjoined on them by the act of 1821 should thereafter be exercised by the trustees of the village.    (Chap. 124, § 11.)

And by an amendatory act, passed in 1834, the trustees of

the village were given power to convey to Oliver Teall, his heirs or assigns, all the rights, property and powers of the trustees of the Syracuse Water-Works, as vested in the village, for the term of thirty-five years, and it was provided that Teall, his heirs or assigns, should be possessed of all the powers, rights and privileges which were granted by the act of 1821, before referred to, and all the powers of the village on the subject; and if he should neglect to exercise them, the trustees of the village, after two years notice, should have the right to resume all such rights, powers and privileges. And it was further provided that, on the expiration of the thirty-five years, they should have the power to reinvest themselves, and take possession of the water-works by paying the estimated cost of erecting the works, less the decrease in value occasioned by waste, decay and use, to be determined by appraisers to be appointed by the Supreme Court, in case the parties were unable to agree upon the amount. (Chap. 151.) In June, 1841, pursuant to that act, and subject to its provisions, such conveyance was made by the trustees of the village of Syracuse to Oliver Teall.

In 1847 the village was converted into a city by charter, passed in December of that year, by which it was provided that the common council should have power to make, modify and repeal ordinances, rules, regulations and by-laws for the following, among other purposes : "To exercise all other powers conferred on them by the act in relation to highways, the prevention of fires, the levying of taxes, the supplying the village with good and wholesome water and other subjects of municipal regulation." (Chap. 475, tit. 3, § 7, sub. 31.) And, further, that all former acts relative to the incorporation of the village of Syracuse were repealed, but that such repeal should not affect any act done, privilege granted, right accrued or established previous to the time when such city charter should take effect. And that the same rights, duties, obligations and requirements "held by the trustees of the village of Syracuse, or imposed upon them, in relation to Oliver Teall, as to supplying the said village with pure and wholesome water, shall

be conferred and imposed upon the said common council."
(Id. tit. 10, § 12.)

Upon the incorporation and organization of the plaintiff,
and in 1849, Teall and his associates in interest conveyed the
water-works property and privileges before mentioned to it;
and through such conveyance the plaintiff took all rights,
powers and privileges which were originally vested in the
trustees, by the act of 1821, to supply the inhabitants of the
unincorporated village of Syracuse with water, and which,
with the property applicable to such purpose, passed to the
incorporated village by the act of 1825, and thence to Teall
by conveyance pursuant to the act of 1834. This reference
has been made to the statutes, representing the legislative
grants to the plaintiff, and from which it derived its rights
and powers upon taking its charter and the conveyance referred
to, with a view to the inquiry as to the character and extent
of such powers and privileges in their relation to the city of
Syracuse.

The company evidently was created solely for the purpose
of supplying water to the city for the use of it and its
inhabitants; and, so far as appears, the city then had no means
for such supply other than such as had been possessed by Teall
and his associates, and such as it may have been contemplated
the plaintiff would provide. It must be assumed that the
legislature was advised of the situation, and that the franchise
was granted for all the purposes within the provisions of the
charter. The question now under consideration is the legisla-
tive intent. And for the purpose of ascertaining the powers
and privileges which were granted to the plaintiff, other than
those incidental to the powers expressly given and necessary
to carry them into effect, reference can be had only to the
terms of the grant. (2 Kent's Com. 298; 1 R. S. 600, § 3;
Halstead v. Mayor, etc., 3 N. Y. 433.)

The construction and effect to be given to the contract
between the state and the grantee of a franchise, have been
the subject of much discussion, and the view of Chancellor

KENT at one time was that, although "the creation of the franchise be not declared exclusive, yet it is necessarily implied in the grant, as in the case of the grant of a ferry, bridge or turnpike or railroad, that the government will not either directly or indirectly interfere with it so as to destroy or materially impair its value. All grants or franchises ought to be so construed as to give them due effect by excluding all contiguous competition which would be injurious and operate fraudulently upon the grant." (3 Kent's Com. 469; *Newburgh Turnpike Co.* v. *Miller*, 5 Johns. Ch. 101.)

Whatever support that rule may seemingly have in reason or propriety, it is not now available to that extent for the beneficial protection of the grantee in the exercise of his franchise, but, on the contrary, public grants are to be so strictly construed as to operate as a surrender by them of the sovereignty no farther than is expressly declared by the language employed for the purposes of their creation.

The grantee takes nothing in that respec. by inference. Such is deemed the legal intent of the state in imparting to its citizens or corporations powers and privileges of public character. And, therefore, except so far as they are by the terms of the grant made exclusive, the power is reserved to grant and permit the exercise of competing and rival powers and privileges, however injurious they may be, to those taken by the prior grantee.

The important leading case to that effect in this country was *Charles River Bridge* v. *Warren Bridge* (11 Peters, 420), where was sustained the grant of the right to erect a bridge over the Charles river, near one which had been constructed over the same river pursuant to prior grant from the state of Massachusetts, although it produced a competition practically destructive of the value to the grantee of such prior franchise. And this was put upon the ground, resulting from the declared rule of construction of such grants, that they should be strictly construed as against the grantee, and that nothing should be taken by inference or presumption to enlarge their import. The court held that the state had relinquished its sovereignty

so far only as the purpose to do so was expressed in the prior grant, and, therefore, as it had not by it made the franchise exclusive in that locality, or denied to itself the power to grant similiar privileges to others, there was no violation of the legal rights of the prior grantee produced by ,the subsequent one complained of. Although that case was determined by a divided court, and it does not very clearly appear, by the report of it, upon precisely what ground all the members of the majority placed their concurrence in the result, the doctrine there announced by Mr. Chief Justice Taney has since then been treated by that court as established. (*Lehigh Water Co.* v. *Easton*, 121 U. S. 391. It has also been adopted and is the settled rule in this state. (*Mohawk Bridge Co.* v. *Utica & S. R. R. Co.*, 6 Paige 554; *Oswego Falls Bridge Co.* v. *Fish*, 1 Barb. Ch. 547; *Thompson* v. *N. Y. & H. R. R. Co.*, 3 Sand. Ch. 625; *Auburn, etc., Plank-road Co.* v. *Douglass*, 9 N. Y. 444, 452; *Fort Plain Bridge Co.* v. *Smith*, 30 id. 44, 61; *Power* v. *Village of Athens*, 99 id. 592· *Dermott* v. *State*, id. 107.

The plaintiff's charter does not, in terms, expressly declare that the contemplated powers and privileges to supply water to the city were exclusively with the plaintiff, nor does it in that manner deny to the state the right to make other similar grants for that purpose. And the same may be said of the acts of 1821, 1825 and 1834, through which the plaintiff, by the conveyance to it, claims to have derived some rights in that respect. The plaintiff undoubtedly took, by such conveyance, all the privileges and property which Teall possessed for the purpose of furnishing such supply, with the power, added by its charter, of taking water from any suitable sources, and, to enable it to do so, it was vested with the right of eminent domain. These several statutes must be treated in *pari materia* with a view to their purpose and effect, and to ascertain the rights taken by the plaintiff through them.

When the trustees, representing the unincorporated and the incorporated village of Syracuse, and subsequently when Teall assumed the power, pursuant to the statute, to furnish water,

there were no other means of supply in contemplation, and such evidently was the situation when the plaintiff took its charter and became vested by the conveyance with all the rights and property then existing applicable and applied to that purpose. Upon the faith of that apparent situation Teall, and afterwards the plaintiff, proceeded to provide the means to supply water to the municipality and its inhabitants, and in that behalf expended much money in the plant for its accomplishment. It is, therefore, with some force urged that these are considerations bearing upon the practical construction of the relation between the plaintiff and the city, produced by the statutes and the proceedings had under them, which disables the latter from denying to the plaintiff, in any manner otherwise than that prescribed by the statute, the right exclusively to continue to supply water there. And much reliance is by the plaintiff's counsel placed upon the sixteenth section of its charter, which required the plaintiff, when requested, to furnish water to the common council of the city for extinguishing fires and other purposes. This provision was made available by request pursuant to it in April, 1851, and afterwards contracts to supply water for certain periods, were made between the plaintiff and the common council. The request was an acceptance of the obligation imposed so far as the statute rendered it essential to the exercise by the plaintiff of the franchise granted to it. It is contended that the request, in view of the duty imposed upon the plaintiff, was productive of a contract between it and the city, perpetual and interminable, while the plaintiff retained its franchise and other property having relation to its exercise. While the request may have made the grant to the plaintiff effectual for the purpose provided by the statute, we think the plaintiff is not entitled, upon any contract between it and the city, to the equitable relief sought, but it must depend upon the contract between it and the state furnished by the grant, aided, so far as it legitimately may be, by the consideration to which such request may be entitled as bearing upon the operation and effect of the grant. The municipal corporation, as such, could

bind itself by such contract only, as it was authorized by statute to make. It could not grant exclusive privileges, especially to put mains, pipes and hydrants in its streets, nor could it lawfully, by contract, deny to itself the right to exercise the legislative powers vested in its common council. It cannot well be claimed that any express power was delegated to the municipality to grant any exclusive franchises, and public policy will not permit the inference of authority to make a contract inconsistent with the continuously operative duty to make such by-laws, rules and regulations as the public interest or welfare of the city may require. (*Milhau* v. *Sharp*, 27 N. Y. 611; *New York* v. *Second Av. R. R. Co.*, 32 id. 261; *Richmond Co. Gas-Light Co.* v. *Middletown*, 59 id. 228; *Gale* v. *Village of Kalamazoo*, 23 Mich. 344; 9 Am. R. 80; *Logan* v. *Pyne*, 43 Iowa, 524; 22 Am. R. 261; *Des Moines Gas Co.* v. *City of Des Moines*, 44 Ia. 505; 24 Am. R. 756; *Norwich Gas-Light Co.* v. *Norwich City Gas Co.*, 25 Conn. 19.)

Reference has already been made to the provision of the city charter conferring upon it power to make by-laws, rules and regulations in relation to certain matters, including those of prevention of fires and supplying water. And it may be observed that in 1857, by an act amendatory of the city charter, it was provided that the common council should "have power to make, establish, publish, modify, ordain, amend or repeal ordinances, rules, regulations and by-laws" for the purposes, among others, "to light the streets and public buildings of the city, and to supply the city with water." (Chap. 63, tit. 4, § 4, sub. 2.) While the city may make contracts and assume obligations for legitimate municipal purposes, and become liable for failure to observe them, it is not consistent with the discretionary powers which the common council may be required to exercise in the discharge of their duty to the public, which they represent, for them to grant, by contract, exclusive privileges having the character of perpetuity. There is no such contract between the city and the plaintiff to support the claim for an injunction against the city. Further than that, it is unnecessary to determine

what contractual relation between them arose out of the request referred to, or what was its character, duration or effect. Nor is it necessary to add that the facts found by the trial court, upon the subject of performance by the plaintiff, would justify the denial of an injunction if the claim for it were dependent upon a mere executory contract between those parties. In dealing with municipal corporations, parties are chargeable with knowledge of their powers, as they are furnished only by statute. It is, therefore, not seen, upon the facts of this case, that the actions were aided by any disability of the defendant city occasioned by estoppel *in pais.*

The inquiry which presents more important considerations has relation to the franchise granted to the plaintiff, and represented by its charter. By it the plaintiff was given corporate existence and vested with powers and privileges to enable it to exercise its functions. This incorporeal hereditament was its property, and whatever other or corporeal property it had or acquired, having relation to its legitimate powers, and for the purposes of their exercise, became, and while applicable to such purpose was, inseparably united with the franchise. The corporate rights and the corporeal means of their exercise, therefore, constitute, as it were, a single body consisting of property corporeal and incorporeal. Both the power and the means of exercising it are essentially united, and upon such union is dependent the enjoyment, as well as the practical value of the franchise. (*Gue* v. *Tide Water Canal Co.*, 24 How. [U. S.] 257; *People* v. *O'Brien*, 111 N. Y. 2.)

When its charter was granted it was in contemplation that the plaintiff would be called upon to assume its corporate duties and exercise its powers in furnishing water to the city of Syracuse; and that for such purpose it would take and acquire the means of doing so. And in that behalf the company did take, by conveyance, certain property, then in use for that service, and thereafter acquired and applied other property to such use, and for nearly forty years has continued to furnish water for the city and its inhabitants. So far as

appears, until the year 1885, no means of supply have been sought for otherwise than through the plaintiff. Then, pursuant to the general act authorizing it (Laws 1880 chap. 85) the Central City Water-Works Company was incoporated, and the objects of its creation, as expressed in its articles of incorporation, were "To supply the city of Syracuse N. Y., and adjacent villages, with pure and wholesome water for domestic use, for fire protection and other public purposes, and for the purpose of accumulating, storing, selling, furnishing and supplying water in said city and adjacent villages for domestic, manufacturing, municipal and agricultural purposes." Shortly thereafter the Common Council of the city adopted a resolution to the effect that the Central City Water-Works Company, subject to the conditions therein mentioned, were authorized to construct, maintain, own and operate water-works in the city of Syracuse for the purpose of supplying it with pure and wholesome water etc., specifying the sources from which the water should be taken, how its quality should be approved, the pressure which it should have at the hydrants, the number, character and generally the distribution of the hydrants to be furnished; and that on the completion of the works (which was to be accomplished within three years after acceptance by it of the proposition), the city agreed to rent from the company, for the period of twenty years, the right to use the water to be supplied by it at five hundred and twenty hydrants, and such additional number as might be ordered, and to pay therefor at the rate of fifty dollars per hydrant annually. The right was reserved to rescind the grant on failure of the company to comply with its terms; also the right after five years to acquire the works and property of the company in the manner there mentioned. This agreement and proposition, and all their terms expressed in the resolution, were formally accepted by the defendant company in April, 1885. The purpose of these actions was to prevent the contemplated agreement between the defendants, and, as made between them, from being carried into effect, upon the ground and for the alleged reason that the plaintiff had the

exclusive right or franchise to supply the city and its inhabitants with water. And although the charter of the plaintiff does not, in terms, declare such power to be exclusive or deny to the state the right to create a rival franchise in another, it is contended that the grant to the plaintiff, in its nature, necessarily gave to the plaintiff the exclusive right to supply the city with water, because a franchise to do so can embrace no less than the whole city and the entire supply of water within its boundaries, and, therefore, the proposed grant to the defendant is an invasion of the plaintiff's franchise.

It may be assumed that what is embraced within the terms of the grant to the plaintiff is exclusive in such sense that it cannot be covered by grant to another. That is to say, a grant from the state to a company to construct and operate a bridge, ferry or telegraph, gives to it the exclusive right to operate such ferry, bridge or telegraph, and no right can be given or taken to occupy the same space as the one so constructed or operated under the grant. The property in the company, to that extent and for such purpose exclusively, belongs to it, but a similar franchise may not infringe such right although it may have the effect to impair its operative value. In such case that would be the incidental consequence of the lawful competition and not an invasion of the prior grant. (*Lehigh Water Company's Appeal,* 102 Penn. St. 515.) By reference to the plaintiff's charter, it will be observed that the provisions directly bearing upon the subject of furnishing water are that, "for the purpose of supplying the said city of Syracuse with pure and wholesome water, said company may purchase, etc., real estate necessary for the purpose." (§ 8.) "And said company shall, when requested, furnish water to the common council of the city of Syracuse for extinguishing fires and other purposes." (§ 16.)

After careful consideration of the able and forcible argument of the plaintiff's counsel on this subject, we are unable, in view of the governing rule of construction in such cases, to adopt its reasoning to the effect that the language or nature of the grant is such as to cut off all competition in furnish-

ing water to the city and its inhabitants, and to vest in the plaintiff the exclusive franchise in that respect.

The effect of rival means for the supply of water to the city upon the value of the plaintiff's franchise, is not properly the subject of consideration upon this inquiry, unless it bear upon the question of construction of its charter, for which purpose it does not seem important. The plaintiff's structures belong to it exclusively, and it is its exclusive right to take water from its reservoirs, convey it through its mains and pipes and to use its apparatus for the distribution and supply of water to the city and its inhabitants. The franchise of the plaintiff and all its property remain subject to its control and management. By force of the grant to it, the plaintiff took and has the right to maintain its structures, the privilege of supplying all the water the city or its inhabitants may take from it, but not the right to supply them with all the water they may be permitted to use. It may be that the demand upon it for supply, will be lessened by the addition of other means which may be provided to bring water into the city.

The supply embraced within the franchise of the plaintiff did not, by the terms of the grant or by necessary implication, shut out all other means of obtaining supply there. And, in view of the demand of the rule of construction before referred to, such exclusive right in the grant of a public franchise cannot rest upon inference, presumption or doubtful construction. (*Chenango Bridge Co.* v. *Binghamton Bridge Co.*, 27 N. Y. 93; 3 Wall. 75.) It would hardly be claimed that a grant to a ferry company of the franchise to supply the means of travel and transportation across the East river, between New York and Brooklyn, would confer the exclusive right on such company to control such transportation, by ferry, on that river between the two cities, although it would have the exclusive right to operate its boats and enter its slips. Such exclusive right would necessarily result from the nature of the grant as vested by it, because the property and means provided for the

exercise of the franchise belong to the grantee, and. can be·
occupied or used by no other party.

We are unable to see the applicable force sought to be given,
analogously, to the *Matter, etc., of Union Ferry Company*
(98 N. Y. 139) to the question under consideration. There.
the ferry company proceeded under the statute (Laws 1882,.
chap. 259) to increase the capacity of ferry slip accommoda-
tions on the East river by taking, *in invitum*, land for the·
purpose. The question was whether that statute was violative
of the provision of the Constitution prohibiting the passage·
of any private or local bill " granting to any private corpora-
tion, association or individual any exclusive privilege, immu-
nity or franchise whatever." (Art. 3, § 18.) It was held that.
the statute was not within that constitutional prohibition or·
its purpose. And, among other reasons, Judge Rapallo, in
delivering the opinion, speaking for the whole court, said that.
" the exclusiveness prohibited is one which is created by the
the terms of the grant, not that which results from the nature
of the property or right granted." There all ferry companies.
are lessees of the city of New York, in which the control of
them is exclusively vested. The Union Ferry Company, in
behalf of the city, as well as for its own beneficial use. as.
lessee, instituted the proceedings for the additional slip at the·
pier held by it as such. The right to appropriate this addition,
thus acquired under the statute, was' exclusively that of .the.
city or of its lessees, as such, of that ferry ; nobody else could
take it in that manner, and, therefore, the learned judge
remarked that ' " where, from the nature of the case, it is·
impossible that the right or power should be possessed or·
employed by more than one party, and it is important to the·
public interest that it should exist and be exercised by some-
one, the state must necessarily have authority to select the
grantee." The inherent nature of the franchise to furnish
water to a city and its inhabitants does not come within that
proposition. That service is not necessarily confined to one,
nor is the supply necessarily dependent upon any single source·
or means of furnishing it.

The franchise to be exclusive must, therefore, be given by the terms of the grant, otherwise it is not a resultance from its nature; and thus we are taken back to the inquiry, which has already received consideration, as to what was granted by the plaintiff's charter. Nothing appears in the prior franchise to supply water to the village, and in the authorized conveyance to Teall, to modify the views above given upon the subject.

It is, however, urged that the city can avail itself of no means, other than through the plaintiff, to obtain any water supply except by resuming and taking its property and powers in the manner prescribed in one of the sections 26 and 29 of the plaintiff's charter, to which reference has already been made. It appears that those provisions were inserted in the charter at the suggestion or request of the common council of the city. And that was evidently done to enable it, in the event referred to in the one, and on the expiration of the time mentioned in the other section, if the interest of the city should require it, to take the matter of its water supply into its own management and control. It is not seen that this right, reserved to the city, has any essential bearing upon the question of the construction of the grant to the plaintiff. It simply gave the city the opportunity, in the events provided, to become possessed of the property which should constitute the plant of the plaintiff and be applied to the service of furnishing water to the city. This right was not made a legal duty, upon the performance of which was dependent the power to use means other than through the plaintiff to obtain further means of water supply for the city. It was a privilege merely, which it might or might not exercise at pleasure. But the franchise granted to the plaintiff and the property united with it, constitute its estate, and which it holds subject to the reserved right of the city to acquire it in the manner so provided by the charter. The defendant company has taken its charter from the state through the general act of the legislature. Its powers enable it to enter into contract to furnish water to the city. The proposed contract does not, in its terms, confer upon it any exclusive right to supply water to

the city. It, therefore, violates no right which the plaintiff took by its grant from the state ; and it was within the power of both defendants to make such a contract. (Laws of 1884, chap. 386; Laws of 1885, chap. 26, § 22, sub. 2.) These views lead to the conclusion that the obligation of the contract between the state and the plaintiff, represented by the franchise granted to the latter, is not and will not be impaired by the exercise by the defendant company, of the privileges granted to it, in the performance of the proposed contract between the two defendants.

The judgments should be affirmed.

All concur except FOLLETT, Ch. J., and VANN, J., not sitting, and HAIGHT, J., not voting.

Judgments affirmed.