Abram M. DeWitt et al., Appellants, *v.* The Elmira Transfer Railway Company, Respondent.

The canal board having declared abandoned by the state certain land, part of the Chemung canal, in the city of Elmira, the legislature in 1872 (Chap. 785, Laws of 1872), conferred upon the city authority to convert the abandoned land into a street; this was accepted by the city. Previous to this the state had granted letters patent for a portion of the land to an individual. In 1878 an act was passed (Chap. 171, Laws of 1878) by the terms of which the state released and transferred to the city the abandoned land "for the use and purposes of a street" on condition that it pay to the claimants under the letters patent a sum specified "for the title and interests of the state and of said defendants;" the same to be raised by assessment upon the lands to be benefited by changing the canal into a street. The payment was made by the city and accepted by the claimants. By act of 1881 (Chap. 482, Laws of 1881), plaintiffs, who owned lots adjoining said street, acquired whatever title then remained in the state, to the center of the street opposite their lots. In an action to restrain defendant, a street railroad corporation, from laying its tracks on that portion of the street, *held*, that by the act of 1878 the city acquired not merely the easement but all the title of the state then outstanding, to be held in trust for the public use as a street; and so, that plaintiffs had no title and the action was not maintainable.

(Argued June 13, 1892; decided October 1, 1892.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made February 11, 1890, which reversed an interlocutory judgment of the Special Term directed upon overruling a demurrer to the complaint; the appeal brought up for review the decision upon the demurrer.

The nature of the action and the facts are sufficiently stated in the opinion.

*Louis Marshall* for appellants.

*Frederick Collins* for respondent.

Landon, J. The complaint to which the demurrer was interposed sets forth in detail a series of facts which the

plaintiffs claim show that two lots, which they own on the easterly side of State street in the city of Elmira, extend to the center of the street, and that the fee to the center of the street is in them subject to the public easement for street purposes; that the defendant, a street railroad corporation, obtained the consent of the city to lay its railroad tracks and operate its railroad in State street and over the portion thereof of which the fee is in the plaintiffs, but has not obtained any right from the plaintiffs, and was proceeding to lay its tracks. This action was commenced to enjoin the defendant. The material facts are hereinafter stated.

On July 17, 1866, the canal board of the state declared abandoned by the state for canal purposes certain of the lands of the Chemung canal in the city of Elmira embracing the *locus in quo*, and what now constitutes State street in that city. The state was the owner in fee of such lands. The city of Elmira subsequently acquired from the state under Ch. 785, Laws 1872; Ch. 834, Laws 1873; and Ch. 171, Laws 1878; whatever title to the portion thereof now constituting State street that the terms of those acts granted to the city, or authorized it to acquire. Before the abandonment of the canal the plaintiffs owned two lots, then adjoining the easterly side of the canal, and now adjoining the easterly side of State street. Under Ch. 482, Laws of 1881, the plaintiffs acquired from the state whatever title then remained in it to the land embraced by extending the side lines of their adjoining lots to the center of the prism of the canal and making such center line their western boundary. Such center line is now the center line of State street.

If the city acquired from the state only an easement in the land used for State street, then the plaintiffs are owners of the fee, subject to the easement, and are entitled to relief, otherwise the judgment is right and should be affirmed.

Ch. 785, Laws 1872, purported to confer upon the city of Elmira authority to convert the abandoned canal into a public street, and to use it for that purpose, but it expressly reserved the fee in the land to the state.

Ch. 834, Laws 1873, was a recognition of the authority conferred upon the city by the previous act, and conferred upon the Utica, Ithaca and Elmira Railroad Co., subject to the consent of the city of Elmira, the right to use such bed of the canal for its railroad. Section 6, art. 7 of the Constitution of 1846 provided that " the legislature shall not lease or otherwise dispose of the canals of the state." It is not necessary to consider the scope of this constitutional provision further than to remark that it is not improbable that the legislature did not grant the fee of the abandoned canal to the city, lest such a grant might contravene the provision.

Prior to April 25, 1878, the city had accepted the privilege conferred by the state respecting the use of the canal bed for a street, but owing to a claim of title made by Lucius and Joseph Humphrey and Samuel Hubbell to the fee of another portion of the abandoned canal forming part of the proposed street, the actual grading and opening of the street had not been completed. The claim of Humphreys and Hubbell to title was under letters patent from the state, which were granted to their grantors July 17, 1866, the same day that the canal board declared the canal within the city of Elmira abandoned.

In 1876 the people of the state brought an action to vacate the letters patent, and in the same year obtained judgment to that effect at Special Term, which, in 1878, was reversed by the General Term. (*People* v. *Stephens*, 13 Hun, 17.) No judgment upon the decision of the General Term was entered. No appeal was taken. The Humphreys and Hubbell claimed $23,000 as the value of the land involved in the litigation and to be taken for the street. The city proposed to assess this sum upon other property benefited in case the letters patent were sustained; the result of an appeal to the Court of Appeals was considered doubtful, and on April 25, 1878, chapter 171 of the laws of that year was passed. All its provisions material to the title granted to the city were subsequently complied with. It is upon this act that the nature of the city's title chiefly depends. The act is entitled "An act transferring a portion of the Chemung canal to the city of Elmira for street

purposes." Its material parts are as follows: "Sec. 1. All that portion of the Chemung canal (describing it) is hereby released and transferred to the city of Elmira for the uses and purposes of a street upon the condition that the city of Elmira pay to Lucius A. Humphrey and Joseph S. Humphrey jointly the sum of five thousand dollars, and to Samuel A. Hubbell the sum of three thousand dollars for the title and interest of the state and of the said persons therein respectively, and also pay the sum of twelve hundred dollars, the costs, charges and expenses of the state incurred" in said suit respecting the letters patent, and also upon the condition that the city of Elmira should raise such sums of money by assessment upon the lands to be benefited by changing the canal into a street.

Thus, under the act of 1872, the city had acquired the right to use all that part of the bed of the abandoned canal that it needed for a street, except the portion thereof claimed by Humphreys and Hubbell. The validity of their claim was in litigation at the suit of the state. While the suit was pending, the construction and use of the street were delayed.

In 1874, the section of the Constitution above referred to was amended, the amendment taking effect January 1, 1875. The section was changed so as to read: "The legislature shall not lease or otherwise dispose of the Erie canal, the Oswego canal, the Champlain canal, the Cayuga and Seneca canal, or the Black River canal." The Chemung canal was thereafter exempt from the constitutional prohibition of lease or disposal by the legislature. The state was thus enabled to confer upon the city the title to the canal bed which it had thus far withheld, and had not granted by the letters patent in litigation. It was willing to settle the pending litigation with Humphreys and Hubbell, and vest in the city whatever title and interest it had in the canal bed, if Humphreys and Hubbell would do the same in respect to their title, upon condition that the city would pay the state its costs and expenses of the litigation, and pay Humphreys and Hubbell $8,000. Hence, the act of April, 1878. Its terms were accepted by all parties in interest and complied with.

Thus, whatever title to the canal remained in the state and in Humphreys and Hubbell was paid for by the city both to the state and to Humphreys and Hubbell. Unless the terms of the act of 1878 granted to the city less title than it paid for, the city acquired all the title that was outstanding. By the terms of the act, the state "released and transferred" the canal to the city. If Humphreys and Hubbell had any title, they, by accepting the payment made to them for it by the state through the city under the terms of the act, consented that the state should transfer to the city their title along with its own. The payment by the city was "for the title and interest of the state and of said persons (Humphreys and Hubbell) therein respectively." No reservation or exception of title is expressed in the act. Its second section does, indeed, contain a reservation, but it is of the right of the state to connect the sewer running from the State Reformatory in Elmira with the sewer in the transferred canal, and to maintain the same. There is no other reservation; the expression of this reservation and no more is some evidence that no more was intended. It is true that the canal was released and transferred to the city for the uses and purposes of a street. But the city had the right, so far as the state alone could confer it, to use it for such purposes under the act of 1872. The new grant, under the act of 1878, was manifestly intended to be of something more than the existing right to use it for the same purpose, and we find this addition to the former grant in the transfer of the canal itself as distinguished from and supplemental to the existing authority to use it, and in the express statement that the consideration to be paid is for the title both of the state and of Humphreys and Hubbell.

The phrase "for the uses and purposes of a street" is no reservation of any part of the title, but here undoubtedly means that the city should use the canal for that purpose; thus showing that an additional consideration for the grant moved to the state in the benefit to result from such use. Title thus acquired is undoubtedly to be held in trust for the public use, and the legislature if necessary could control and

direct the trust, but this is not inconsistent with title in fee to the land forming the street. (*Kellinger* v. *Forty-Second St. R. R. Co.*, 50 N. Y. 206–209.) We conclude that the city acquired the fee under the act of 1878.

It is undoubtedly true, as the learned counsel for the appellant contends, that certain grants by the sovereign are to be strictly construed in favor of the grantor, and are not to be expanded by construction so as to embrace more than is strictly necessary to satisfy their terms. In the recent case of *Syracuse Water Co.* v. *City of Syracuse* (116 N. Y. 167), the grant of a franchise claimed by the grantee to be exclusive was tested by this rule. The same rule of strict construction applies to the grant of large tracts of land by the state to corporations to promote the construction of railroads and other objects of public utility, but also of private ownership and profit. (*Leavenworth, etc., R. R. Co.* v. *United States*, 92 U. S. 733.)

The same rule is applied against the state itself or the grantees of its power of eminent domain, when private property is taken for public use ; the policy of the law is to protect the private owner in his title so far as the act of the legislature and the public purpose will permit. (*Washington Cemetery* v. *Prospect Park, etc., R. R. Co.*, 68 N. Y. 591.)

The principles involved are clear ; the state should be protected against the encroachment of private interests upon its sovereign rights, and against the overreaching rapacity of monopolistic corporations ; and private parties should also be protected against the unnecessary exactions of the state.

It is obvious that the reason of these rules does not apply to the present case. The land here in question had ceased to be useful to the state, was a small strip suitable for a public street, and could best be devoted to that purpose by a grant of it by the state to the city. Undoubtedly the original grant of the mere easement for that purpose would have sufficed if no complications had arisen over Humphreys and Hubbell's claim of title. But they did arise, the state was a party to them, and the city was the sufferer. The way to compose the

difficulty was to buy out Humphreys and Hubbell and the state, and since it was uncertain whether the title was in one party or the other, to take all the title both could confer. This was sought to be accomplished by the act of 1878 and we think was accomplished. If the state thereby also parted with its title to the other part of the street not claimed by Humphreys and Hubbell, it was because it did not choose to except or reserve it.

No reason is perceived why the statute should not apply, which provides that all the estate or interest of the grantor shall pass by the grant, unless the intent to pass a less estate shall appear by express terms, or be necessarily implied in the terms of the grant. (1 R. S. 748, § 1.)

The judgment should be affirmed with costs.

All concur, except BRADLEY, J., not voting.

Judgment affirmed.