CHICAGO GENERAL ST. RY. CO. v. ELLICOTT et al.

(Circuit Court, N. D. Illinois, N. D.   July 5, 1898.)

STREET RAILROADS—PERMIT TO STRING ELECTRIC WIRES IN STREET—MUNICIPAL CORPORATIONS.

A permit from a city to a street-car company to string electric wires along a street does not give any right to use such wires to distribute power to private consumers.

In Equity.

Suit for injunction by the Chicago General Street-Railway Company against Edward B. Ellicott, Carter H. Harrison, the city of Chicago, and the Chicago General Railway Company.

Glenn E. Plumb, for complainant.

Samuel A. Tyande, Asst. Corp. Counsel, for defendants.

GROSSCUP, District Judge (orally).   The bill in this case is to restrain the defendants the city of Chicago, Carter H. Harrison, its mayor, and E. B. Ellicott, its electrician, from cutting the wires of the complainant carrying the electrical current from the complainant's generator to private motors in the lumber district of the city of Chicago.   The facts essential to the determination of the motion for an injunction may be stated as follows:

The Chicago General Street-Railway Company is organized under the laws of Illinois for the purpose of constructing and operating

a heating, lighting, and power-supply system within the present or future limits of the city of Chicago. The Chicago General Railway Company, a corporation organized to construct, maintain, and operate a street railway, came into possession of the property and the franchises of the West Chicago Railway Company, among which franchises was a permit from the city to construct and maintain overhead wires for the purpose of the operation of said road. On or about the 25th of October, 1897, the said Chicago General Railway Company applied to Hon. L. E. McGann, commissioner of public works, for a permit supplemental to the permit by which it was already operating, which application is, in part, as follows:

"This company, as successor to the rights of the West Chicago Street-Railway Company, hereby makes a formal application for a permit to suspend two necessary feed wires from the line of poles now constructed and on the route below described. Such wires to be constructed and maintained for the purpose of supplying electric current to be used for power and heat and light purposes, and with the right to connect the wires herein authorized with the general or power station of said company at Kedzie avenue and 30th street, along the following route."

Thereupon the city of Chicago issued, upon this application, the following permit:

"In pursuance of an ordinance passed by the city council February 14, 1895, granting certain rights and privileges to the West Chicago Street-Railway Company on the streets mentioned below, permission is hereby granted to the Chicago General Railway Company (it having succeeded to the said rights and privileges on the streets mentioned) to suspend two feed wires from the line of poles now constructed on Morgan street. * * * This permit is issued and accepted on the condition that the said wires shall be strung in accordance with, and shall be maintained subject to, all the conditions, stipulations, and requirements of the ordinance hereinbefore mentioned, to all orders and ordinances which may be passed by the city council of the city of Chicago pertaining to the same, and to all orders of the said commissioner; and upon the further condition that the said wires shall be used only for the supply, and not for return, current. * * * This permit is revocable by the commissioner of public works at any time for cause."

Prior to this time the complainant had entered into a contract with the Chicago General Railway Company, whereby the latter leased to the former, for the purpose and to the intent that the former might carry on the business provided for in its articles of incorporation,—that is, the business of constructing and operating a heating, lighting, and power-supply system,—the joint use of the poles, feed wires, and electrical appliances along the lines of the former's railway. It does not appear that the foregoing contract was called to the attention of the city at the time the permit was issued, or that the city issued the permit with any reference to the contract between the complainant and the Chicago General Railway Company. After the issuance of the permit, the Chicago General Railway Company suspended the feed wires mentioned in the permit, and thereupon, under its contract with the complainant, these feed wires were used to supply the electric current to the complainant's patrons in the lumber district. Under the arrangement between the complainant and the Chicago General Railway Company, the former furnished the latter the necessary electrical power for the operation of its railway. It appears that both the trolley wires proper and the feed wires are

connected to the generator, but that, to supply to the trolley wire sufficient current at a distance from the generator, these feed wires are used, the complainant utilizing them as well for the purpose of furnishing power to its private patrons, by tapping them at given places along the line. Subsequent to all these things, the city council of the city of Chicago passed an ordinance creating a department of electricity, in which ordinance it was provided, among other things, that no electrical current should be supplied from any trolley line for any purpose whatever to any building, except for lighting the power stations from which current is supplied to such trolley lines. Under the authority colorably vested in the city electrician by this clause of the ordinance, he purposes to cut the complainant's wires, unless it desists from using the feed wires along the trolley lines for the double purpose of furnishing electrical current to the trolley street-car lines and to the private patrons of the complainant. The complainant alleges that this ordinance is invalid—First, because it impairs the obligation of complainant's contract with the state; second, because it deprives the complainant of its property without due process of law; third, that it denies to the complainant the equal protection of the laws; fourth, that as a police regulation the ordinance is void.

The jurisdiction of this court, of course, depends upon whether the conduct threatened by the city is in virtue of an ordinance that contravenes some portion of the laws of the United States. The court has no jurisdiction to restrain a simple trespass upon the complainant's rights, unless the trespass threatened violates one of his rights under the constitution and the laws of the United States. It may be assumed that the city has no power by ordinance to prevent the complainant from engaging in or carrying on the business of furnishing power, heat, and light, as its charter provides, or from furnishing such power, heat, and light, both to street-railway companies and to private consumers. It may also be assumed that any usual, lawful, and authorized means of attaining the benefit of this general power is within complainant's general charter rights, and is constitutionally free from impairment or attack upon the part of the city. A power to furnish heat, power, and light implies the power to adopt the usual and lawful means of attaining that end. But the complainant has no right, under its charter, in the absence of a grant from the city, to erect its poles or string its wires along the streets of the city. The general charter from the state does not carry with it a grant to the use of the streets. The power to give or withhold that grant lies in the city government. I can by no fair interpretation of the transactions between the complainant and the city find any permit to the complainant to go upon the city's streets for any purpose outside of the erection, maintenance, and operation of a railway line. The application for a permit was made by a company operating a street railway only. The language of the application is for a permit to suspend two necessary feed wires from the line of the poles now constructed, and on the route described, to be maintained for the purpose of supplying electrical current to be used for operating, heating, and lighting purposes. The permit granted on this application was

to the Chicago General Railway Company, a company operating only a street railway, and included simply the right to suspend the two wires asked for. I cannot assume, from this correspondence, that the city understood that these additional wires were to be used for the conveyance of the electrical current to private consumers. The applicant was a street-railway company, not a company generally furnishing electrical power. The privilege asked made no mention of anything other than the heat, light, and power needed in the operation of the street railway. An application for a permit to string wires to distribute electrical power to private consumers could have been so easily framed in apt language to cover the purpose required that the absence of such language implies the absence of such purpose. It is not at all certain that the city would have granted these additional rights to the complainant, had they been specifically asked for. It would have implied either larger voltage upon the wires, or a larger number of wires than the operation of a street-railway line demanded. Either increased voltage or increased number of wires are objections, and might, on that account, have been refused. Upon this view of the case, the complainant is without any permit from the city to use these feed wires for the purpose of distributing power to private consumers. The city may, therefore, by ordinance, or any other action, refuse the right of such a use, and may, if necessary, enforce that refusal; at least it is clear that the complainant has no right founded on the constitution or laws of the United States to compel the use of the city's streets for the purposes named, without a permit having theretofore, for that purpose, been granted. For these reasons the motion for an injunction must be denied.