PRESIDENT, ETC., OF COLBY UNIVERSITY et al. v. VILLAGE OF
CANANDAIGUA et al.

(Circuit Court, N. D. New York. September 13, 1899.)

MUNICIPAL CORPORATIONS — RIGHT TO CONSTRUCT WATERWORKS — EFFECT OF
FRANCHISE GRANTED TO WATER COMPANY.

The granting by a village in New York of a franchise to a water company pursuant to the provision of Laws 1873, c. 737, merely authorizing the company to lay its pipes in the streets, and the exercise by the company of such franchise by the erection of a water plant, do not affect the legal right of the village at any time thereafter to construct waterworks of its own, as authorized by Laws 1875, c. 181, and it is not required in such event to acquire by purchase or condemnation the property of the company, the provision of the act of 1875 authorizing such acquisition having been construed by the state courts as permissive only, and not mandatory.

This was a suit in equity by bondholders of a water company to enjoin the village of Canandaigua from constructing municipal waterworks. On final hearing.

The complainants are owners of $12,000, face value, of the first mortgage bonds of the Canandaigua Waterworks Company, a domestic corporation, engaged in supplying water, for the last 15 years, to the inhabitants of the village of Canandaigua, N. Y. In the latter part of 1883 the waterworks company pursuant to the provisions of the statutes of the state of New York (chapter 737, Laws 1873) received from the trustees of the village and the supervisors of the town of Canandaigua a franchise granting permission to lay pipes in the village streets upon the following conditions: First. The streets to be left in as good condition as before excavating. Second. The water to be taken from Canandaigua Lake, at a point not less than 2,000 feet from the shores, and distributed by steam power. Third. The charge to citizens not to exceed the price paid by citizens of other villages in the state. Fourth. Two miles of mains to be laid within a year. Fifth. The company to execute an indemnity bond to save the village harmless from injuries resulting from excavations. Sixth. In case of failure of the water company to comply with any of the above provisions the privileges granted were to become null and void. It will be noticed that this franchise simply gives permission to the company to proceed and lay its pipes; it grants nothing more. There is no affirmative covenant of any kind on the part of the village. The bonds held by the complainants were issued in aid of the construction of the said system of waterworks which now extends over 14 miles and cost about the sum of $150,000. Contracts were made at various times with the village for supplying water for public use. The last contract expired September 1, 1895, being executed September 5, 1894. These contracts were all of like purport varying only in time and in the amount to be paid annually. The only material covenant on the part of the village was to pay for water furnished, the amount varying from $3,000 to $4,750 per annum. The business of the company gradually increased and in 1894 it was supplying a large number of the inhabitants of the village with water. One-fourth of the buildings within the corporate limits—including the principal buildings—were subscribers. During the year 1894 its gross income was $15,000, which enabled it to pay operating expenses and nearly 6 per cent. interest on its bonds. The defendants offered evidence tending to show that the water supplied by the company was impure, its rates exorbitant and the pressure insufficient. It is unnecessary to state this testimony in detail for the reason that the court is convinced that the accusations are unfounded in fact, unavailable in law and immaterial in any view. The rates charged the municipality were agreed to by it and the water was taken from Canandaigua Lake, which is also the source of the village system. Had there been any just ground of complaint in the particulars referred to, the defects could have been, and doubtless would have been, cured had the attention of the company been legally called thereto.

96 F.—29

In short, it is thought that the record shows that the company performed all the conditions of the franchise and of the contracts on its part and that the subsequent acts of the defendants cannot be justified by any breach of these conditions. In December, 1894, the village, through its board of water commissioners, resolved to construct a new system of waterworks to be owned and operated by the municipality. Proceedings were taken under chapter 181 of the Laws of 1875 and a new plant was constructed at an expense approximating $133,000. The pipes of the new system were laid substantially parallel with those of the water company, the water being taken in each instance from the same source,—Canandaigua Lake. Some attempts were made to purchase the property of the water company which proved abortive, but no proceeding to take the same by condemnation was commenced. On the 30th of September, 1895, the village formally accepted the new system and has been operating it since that date. Without setting out the facts in detail it may be stated without contradiction that the result of building the new works has been greatly to impair the value of the old works. The complainants' bonds are, practically, worthless. Soon after the complainants became aware of the situation they began this action asking for an injunction restraining the erection of the new plant. This motion was denied (69 Fed. 671), the court holding that the state statute (section 22, c. 181, Laws 1875) authorizing a municipality to acquire the property of existing corporations organized under the laws of the state for the purpose of supplying water to the inhabitants of villages, was permissible merely and not mandatory. A similar decision was made in the state court in an action brought by the water company against the village. An elaborate opinion (unreported) was delivered at special term. The decision was affirmed at general term (90 Hun, 605, 35 N. Y. Supp. 1104) and in the court of appeals the appeal was dismissed (149 N. Y. 619, 44 N. E. 1121). The bill was verified June 29, 1895, and process was issued thereon July 11, 1895.

William A. Underwood and J. H. Metcalf, for complainants.
James C. Smith and T. H. Bennett, for defendants.

COXE, District Judge (after stating the facts). It is thought that the decision must turn upon the answer to a single question, namely, has a village corporation, after having granted a franchise to a water company, the right, pursuant to the law of 1875, to construct a water system of its own without taking, by purchase or condemnation, the property of the existing company? Chapter 181 of the Laws of 1875 is a comprehensive enactment to enable "the villages of the state to furnish pure and wholesome water to the inhabitants thereof." It is not confined to those villages where there is no general water supply. It contemplates and expressly provides for the precise situation existing at Canandaigua in 1894. The proper construction of section 22 of the act is no longer in doubt. It is permissive and not mandatory. This is established by uncontradicted authority and was conceded at the argument and in the complainants' brief. In case of an existing water company, therefore, the village authorities can take it or let it alone as they like. Their right to construct their own works does not depend in the slightest degree upon their acquiring the works of the company. If, in their judgment, it is not wise or necessary to take the company's property they may proceed and erect their own plant precisely as if the company had never been organized. This proposition seems too plain for debate. But, say the counsel for the complainants:

"We do not contend that the language of section 22 is mandatory in compelling a condemnation of the property, but what we contend is that the·

village could not act with regard to acquiring waterworks under the Laws of 1875, where there was an existing company with a franchise under the Laws of 1873, unless it did purchase or condemn the works."

The distinction here drawn seems too metaphysical and refined for practical application. Having conceded that the section is permissive merely, a construction is placed thereon which, in effect, makes it mandatory. To the mind of the court it appears inconsistent to contend that the acquisition of existing works is an absolute condition precedent to village ownership after having admitted that, by the terms of the statute, it is entirely optional with the village whether it takes the existing works or not.

It is argued that the act of 1875 must be treated in pari materia with the act of 1873, and that the two should be construed to mean that a village may provide for a water supply either by means of a private corporation or public ownership. That it may adopt either of these courses but not both, and, having chosen to obtain a supply of water through a private corporation, its power is exhausted in that regard. This position would be plausible were there any room for construction, but there is not. The act of 1875 recognizes the existence of corporations organized under the prior act and expressly provides. as before stated, that the village may take the property of such corporation if it deems such action advisable; if not, it may proceed and build entirely new works of its own. The complainants interpret section 22 as if it read as follows:

"Whenever any corporation shall have been organized under the laws of this state for the purpose of supplying the inhabitants of any village with water, the rights, privileges, grants and properties of such corporation must be reclaimed by purchase or condemnation before said board of water commissioners shall proceed to construct the waterworks as hereinbefore provided."

No canon of construction is familiar to the court which transforms plain and unambiguous language permitting an act to be done into a positive command to do the act. So far as the written law is concerned there can be little doubt that villages in this state may build and own their own water supply notwithstanding the fact that private corporations are in the field, provided the village authorities have done nothing more than permit the corporation to lay its pipes in the village streets. In the present instance the village simply granted a naked permission to do this to the water company. It was a license and nothing more. Indeed, under the provisions of section 4 of the act of 1873 it is doubtful if any additional rights could have been granted. But it is enough that none were granted. The village is not hampered by any covenant on its part not to grant additional franchises to others. There is no agreement that it will not build its own works and no stipulation that it will for an indefinite period purchase water of the company. The controversy is, therefore, free from the complications which existed in several reported cases.

All of the salient propositions here involved were determined adversely to the complainants' contention in the case of Syracuse Water Co. v. City of Syracuse, 116 N. Y. 167, 22 N. E. 381. It was there asserted by the plaintiff, upon facts closely analogous to those in the

case at bar, that the water company possessed an exclusive right to furnish water to the city and its inhabitants and, consequently, that the city was powerless to obtain a supply from other sources. The decision establishes the following propositions: First. For the purpose of ascertaining the powers and privileges possessed by the water company recourse can only be had to the terms of the grant' which must be strictly construed against the grantee who takes nothing by inference. Second. Powers and privileges not expressly and exclusively granted are reserved and may subsequently be conveyed to a competitor of the grantee though the result may be injurious and practically destructive of the value of the prior franchise. Third. A charter which does not expressly declare that the right to supply water to the city is exclusive cannot be construed as an exclusive grant because of a provision requiring the company, on request, to furnish water to the municipality. Fourth. A municipal corporation can bind itself by contract only so far as authorized by statute. It cannot grant exclusive privileges to lay pipes in its streets or curtail by contract the right to exercise the powers vested in its legislative board. Fifth. By the grant to it the water company was given the privilege of supplying all the water the city or its inhabitants may wish to take, "but not the right to supply them with all the water they may be permitted to use." Sixth. The right reserved to the city to take the property of the water company was a privilege merely which it might or might not exercise at its pleasure, it was not a legal duty upon the performance of which depended the right of the city to procure water from sources other than the water company. These propositions are fortified by a wealth of authority which it is not necessary to reproduce. The only distinction pointed out by counsel is that in the Syracuse Case the injury was not inflicted directly by the municipality, as in the case in hand, but through the medium of a rival corporation to which a franchise was given by the city. The difference does not seem to the court material. If the village of Canandaigua be not precluded by reason of its franchise to the water company, if it still retains the right to obtain water from other sources it can make no difference, from a legal point of view, whether it delegates that right to others or exercises the right itself. The complainants contend that the village has granted an exclusive and inviolable franchise to the water company and has thus exhausted its powers. If this contention be well founded the complainants are entitled to a decree, but if, on the other hand, the doctrine of the Syracuse Case be correct, there is no estoppel, and the village, being free to act, may either grant a new franchise or exercise the unquestioned right to construct. its own works, vested in it by the statute. In other words, it is free to act and may adopt either course as its interests dictate. Doctrine similar to that enunciated in the Syracuse Case will be found in the following authorities: In re City of Brooklyn, 143 N. Y. 596, 38 N. E. 983; Warsaw Waterworks Co. v. Village of Warsaw, 16 App. Div. 502, 44 N. Y. Supp. 876.

The authorities relied upon by the defendants are clearly distinguishable upon the facts. In the Walla Walla Case, 172 U. S. 1, 19 Sup. Ct. 77, there' was an express agreement on the part of the city

not to build waterworks of its own during a period of 25 years,—the term of the contract.   The provision being that, while the contract was in force, "the city of Walla Walla shall not erect, maintain or become interested in any waterworks except the ones herein referred to."   The court decided that this stipulation was not ultra vires and that it was a palpable violation of its provisions for the city to construct a system of waterworks of its own while its contract with the company had 19 years to run.   If the village of Canandaigua had covenanted with the waterworks company that in no event would it erect waterworks of its own until after the year 1909 the two cases would be analogous.   The case of White v. City of Meadville, 177 Pa. St. 643, 35 Atl. 695, arose under the laws of Pennsylvania, which differ in several important particulars from the laws of New York here in controversy.   The court does not, however, seek to disguise the fact that the reasoning of that decision is in conformity with the complainants' contention.   Indeed, it may as well be conceded that were this controversy before the Pennsylvania court consistency would require a decree for the relief demanded in the bill.   The Meadville decision states the argument for the water company as succinctly as possible and points out the injustice of permitting the sovereign authority, which gives life to the corporation, to destroy its property by indirection.   Were the question an open one, this view would have great weight though modified somewhat by a contemplation of the inequitable results which might ensue were the Pennsylvania doctrine pushed to its logical conclusion.   Might it not follow that instances will be more numerous than at present where a community is held in the grasp of a selfish and unyielding monopoly which condescends, for an exorbitant reward, to deal out liquid filth in parsimonious doses to the parched but helpless inhabitants?   Admitting that the Meadville decision cannot be reconciled with the decisions of the courts of New York, it is clearly the duty of this court to follow the latter.

The latest exposition of the law upon this subject will be found in Bienville Water-Supply Co. v. City of Mobile, 95 Fed. 539.   The cases cited by the complainants' counsel, and several others of similar import, are there commented upon and their inapplicability to a case like the one at bar is clearly pointed out.   The court states its conclusion in language, equally applicable here, as follows:

"Thus we have seen that the contract, in every case to which our attention has been called, either provided for an exclusive right in the water company to supply water to the city and its inhabitants, granted or contracted for by the city, or contained a covenant by the city that it would not erect waterworks of its own, and would abstain from granting the right to do so to a competing company, during the life of the contract.   We have seen that the contract under consideration in this case contains no such stipulation or agreement.   We have seen that it does not attempt to grant any exclusive right to the complainant, and that it contains no provision that the complainant shall furnish water to the inhabitants of the city of Mobile, and no covenant by the city that it will not build or acquire waterworks of its own, or abstain from supplying water to its inhabitants, during the continuance of the contract. * * *  My conclusion, then, is that the complainant has shown no valid or legal grounds on which to grant it the injunction prayed for in the bill."

Several of the complainants' arguments are addressed to the ethical rather than the legal aspects of the controversy. It may be, in view of existing relations, that the defendants' conduct was not actuated by the purest morality or the most exalted altruism. It may be that, having granted a franchise to the water company, good faith required that they should not construct a system of their own, at least until they had condemned and paid for the property of the company. But these are considerations which the court is not called upon to determine. The golden rule is not a rule in equity and until the courts are given jurisdiction to enforce the principles of the decalogue their duty will be accomplished when they have ascertained and enforced the legal rights of the parties. The court has no doubt as to what those rights are under the statutes of this state as interpreted by tribunals whose judgments this court is bound to respect, but it may not be amiss to suggest that a provision of law safeguarding the rights of existing corporations would be in accordance with natural justice and would prevent the destruction of property in the hands of innocent parties who are powerless to protect themselves. The bill must be dismissed.