BOISE CITY ARTESIAN HOT & COLD WATER CO., Limited, v. BOISE CITY, IDAHO.

(Circuit Court of Appeals, Ninth Circuit. May 29, 1903.)

No. 864.

1. WATER COMPANIES—DUTIES—CONSTRUCTION OF IDAHO STATUTES.

Rev. St. Idaho 1887, § 2711, relating to corporations formed to supply water to cities or towns and authorized to do so by ordinance, and providing, inter alia, that such companies "must furnish water to the extent of their means in case of fire or other great necessities free of charge," having been taken from the statutes of California, where it had been so construed by the Supreme Court of the state, requires such companies to furnish water free of charge for street-sprinkling purposes, the flushing of sewers, etc.

2. SAME—DURATION OF FRANCHISE—CONSTRUCTION OF ORDINANCE.

A city ordinance giving a person or company the right to lay and repair water pipes in the streets and alleys of the city, but without fixing any term for the privilege, is a grant of a license only, revocable at the will of the city, since it had no power to grant a perpetual franchise in its streets in the absence of express statutory authority; and the subsequent passage of an ordinance granting the same privilege to a succeeding corporation organized under the laws of the state, but imposing upon the grantee the duty of furnishing water for city purposes free of charge, in accordance with the statutes of the state, operated as such revocation, and, whether accepted by the grantee or not, it could only exercise the privilege thereafter subject to the obligation imposed.

3. SAME—SUBJECTION TO STATE AND MUNICIPAL CONTROL.

The fact that corporations formed for the purpose of furnishing water to cities or towns are denominated "private corporations" in the statutes of a state does not affect the nature of their rights and duties, nor exempt them from legislative or municipal control.

4. SAME—CONTRACTS BY CITY FOR WATER.

The fact that a city, from year to year, entered into contracts with a water company to supply water for city purposes, and paid for the same, or that by reason of such contracts the company expended money for additional equipment, gives it no right to a continuation of such payments after the contracts have expired.

**5. SAME—STATUTES REGULATING—SOURCE OF SUPPLY.**

A statute imposing obligations on companies furnishing water to the inhabitants of cities or towns is applicable alike to all companies which so furnish water and use the streets for the purpose, and it is immaterial whether they obtain the water from public streams or from a private source of supply.

In Error to the Circuit Court of the United States for the Central Division of the District of Idaho.

This action was brought by the plaintiff in error against the defendant in error to recover damages for the wrongful taking of water. The plaintiff in error, as a corporation of the state of West Virginia, and as the owner of waterworks in Boise City, Idaho, set forth two causes of action in its complaint. The first is an assigned cause of action for damages for taking water prior to the time when it became the owner of the waterworks, and while its immediate predecessors owned and operated the same. The second is for damages on account of such taking since it became the owner. The complaint alleged, in substance, that on October 3, 1889, the defendant in error granted to H. B. Eastman and B. M. Eastman a franchise by an ordinance providing as follows:

"Section 1. H. B. Eastman and B. M. Eastman and their successors in interest in their waterworks for the supply of mountain water to the residents of Boise City, are hereby authorized to lay and repair their water pipes in, through, along and across the streets and alleys of Boise City under the surface thereof, but they shall at all times restore and leave all streets and alleys in, through, and along which they may lay such pipes in as good condition as they shall find the same and shall at all times promptly repair all damage done by them or their pipes or by water escaping therefrom."

The complaint further alleged that the Eastmans accepted said franchise, and laid pipes thereunder, and furnished water to the residents of Boise City, and charged and collected reasonable water rates therefor, and in all respects complied with the ordinance; that in June, 1890, they and others formed under the general laws of Idaho as a private corporation—a corporation known as the Boise Waterworks Company—which corporation became the successor in interest of said Eastmans; that on March 28, 1891, under said laws of Idaho, the Artesian Hot & Cold Water Company, Limited, was incorporated and organized, and became the successor in interest of the said Boise Waterworks Company and of the said Eastmans in and to said waterworks and franchise; that the water furnished by the Eastmans and by its successors in interest is procured by deep boring in the rocks and mountains upon their own land, whereby they found both hot and cold water, and furnished the same for various beneficial purposes, including the use of baths and bathhouses; that the supply of hot water is limited, and for more than a year last past has been all applied for and rented to patrons, and that the supply of cold water is limited, and can only be increased by great expense, including the necessity of expensive pumping; that for the years 1897, 1898, and 1899 the city contracted with the said Artesian Hot & Cold Water Company for the supply of water for street-sprinkling purposes in the city of Boise, and paid a reasonable price therefor, and that in order to furnish said water under said contracts, the said company erected and maintained at its own expense standpipes in all parts of the city for the convenience of the city in taking said waters, and at its own expense, and in order to furnish said water, increased its pumping facilities, the expense of all of which was over $20,000; that in the month of March, 1900, the defendant in error, having refused to pay for water for municipal purposes, passed an ordinance purporting to grant to the said water company the right to lay pipes in the streets and alleys of said city, and to collect charges for water supplied to the inhabitants thereof, and to require the water company to furnish water for city purposes free of charge; that the water company neither requested nor assented to or accepted said ordinance; that thereafter the city took the water from the water company against its protest, which taking constitutes the tort for which damages are sought to be recovered; that one Peter Sonna has, and has had, a system of waterworks which supplies a considerable

portion of said city at rates fixed by contracts between him and his water customers, but that the said Sonna did not furnish water free to the city for any purpose, nor did the city require the same, but, on the other hand, the city has taken the water from the said Artesian Hot & Cold Water Company and used it for street-sprinkling purposes in those portions of the city which are wholly supplied by water from Sonna's system.

In the second cause of action the plaintiff in error set forth its own incorporation under the laws of West Virginia, and alleged that on August 28, 1901, it became, and ever since has been, the successor of said Artesian Hot & Cold Water Company, and the owner of its property and franchises, and has carried on the business of supplying water in the same manner as that company carried it on prior thereto. It alleged the wrongful taking of water since that date against its protest and without its consent. The answer made denial of various of these allegations, and denied that Peter Sonna exercised rights, privileges, or franchises in supplying water to the inhabitants of Boise City under the same or like kind of powers or privileges, or under the same or like grants or franchises, as those of the Boise Waterworks Company, and alleged the fact to be that that company has alone enjoyed the rights, privileges, and franchises of supplying water to Boise City and the inhabitants thereof. The answer alleged the fact to be that long prior to the time of the passage of the ordinance of October 3, 1889, H. B. Eastman and B. M. Eastman had laid and repaired their water pipes in, through, and along the streets and alleys of Boise City, and had exercised all rights and privileges which they have at any time enjoyed; that the ordinance was passed merely in confirmation of the rights theretofore assumed and exercised. On the issues so raised, the cause was tried before a jury. At the close of the evidence, the court instructed the jury to return a verdict for the defendant in error. That instruction is the ground of the principal assignment of error.

Alfred A. Fraser and Selden B. Kingsbury, for plaintiff in error.

John J. Blake, Charles S. Kingsley, and W. E. Borah, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The defendant in error justifies its taking of the water of the plaintiff in error under the provisions of section 2711 of the Statutes of Idaho passed in 1887, which reads as follows:

"All corporations formed to supply water to cities or towns must furnish pure, fresh water to the inhabitants thereof for family uses so long as the supply remains, at reasonable rates without distinction of person upon their demand therefor, and must furnish water to the extent of their means in case of fire or other great necessities free of charge. The rates to be charged for water must be determined by commissioners to be selected as follows: * * *."

This statute was taken from the laws of the state of California. By the courts of that state it had been construed as requiring water companies to furnish free of charge water for street-sprinkling purposes, flushing sewers, etc. Spring Valley Water Co. v. City, 52 Cal. 111; San Diego Water Co. v. City, 59 Cal. 517; Hawes v. Contra Costa Water Co., 5 Sawy. 287, Fed. Cas. No. 6,235.

The plaintiff in error contends that the statute of 1887 confers upon the city of Boise no right to take water free from it or its predecessor, for the reason that they were protected by the franchise giv-

en to the Eastmans.   There can be no doubt that the grant of a privilege to lay water pipes and furnish the inhabitants of a municipality with water for a stated period of time, accepted and acted upon by the grantee thereof, is a grant of a franchise given in consideration of the performance of a public service, and is protected against hostile legislation by the state.   New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; New Orleans Water Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525; St. Tammany Waterworks v. New Orleans Waterworks, 120 U. S. 64, 7 Sup. Ct. 405, 30 L. Ed. 563.

But had the Eastmans such a contract with the city as to come within the rule just cited?   The ordinance of October, 1889, granted permission to the Eastmans and to their successors in interest to lay and repair their pipes in the streets of the city, and to furnish water to the inhabitants thereof.   No term was fixed for the duration of the privilege, and no contract was in terms made between the city and the grantees of the privilege.   It is plain that the ordinance was either the grant of a license revocable at the will of the grantor, or, by its acceptance on the part of the grantee, it became an irrevocable and perpetual contract.   No middle ground is tenable between these two constructions.   In the Constitutions of nearly all the states it is provided that no exclusive or perpetual franchises shall be granted, and, irrespective of such constitutional limitation, it is clear, both upon reason and authority, that no municipal corporation, in the absence of express legislative authority, has power to grant a perpetual franchise for the use of its streets.   The city of Boise was incorporated by the territorial legislature of Idaho on January 11, 1866.   It was given power "to provide the city with good and wholesome water," and to erect or construct "such waterworks and reservoirs within the established limits of the city as may be necessary or convenient therefor."   There can be no doubt that under this provision of its charter the city had the power to grant the use of its streets for a fixed reasonable period of time, either to an individual or to a corporation, for the purpose of furnishing a water supply to the inhabitants.   It had no authority, however, to make a perpetual contract.   A municipal corporation intrusted with the power of control over its public streets cannot, by contract or otherwise, irrevocably surrender any part of such power without the explicit consent of the Legislature.   Cooley's Constitutional Limitations (2d Ed.) 205, 210; Dillon on Municipal Corporations, §§ 715, 716; Barnett v. Denison, 145 U. S. 135, 139, 12 Sup. Ct. 819, 36 L. Ed. 652.   And legislative grants of powers to municipal corporations are to be so strictly construed as to operate as a surrender of the sovereignty of the state no further than is expressly declared by the language thereof.   Charles River Bridge Co. v. Warren Bridge, 11 Pet. 426, 9 L. Ed. 773, 938; Syracuse Water Co. v. City of Syracuse, 116 N. Y. 167, 22 N. E. 381, 5 L. R. A. 546; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685, 696, 17 Sup. Ct. 718, 41 L. Ed. 1165; Stein v. Bienville Water Supply Co., 141 U. S. 67, 11 Sup. Ct. 892, 35 L. Ed. 622.   From these principles and authorities it follows that the Eastmans were given no exclusive or perpetual right, and that the ordinance operated to grant them a license only, and left

the city free at any time to revoke the privilege granted, or to put in its own waterworks, or to grant a franchise to another company. The most that the licensees could claim under it was that it legalized their use of the streets for supplying water, and gave them permission to occupy the same until such time as the city might see fit to terminate the privilege. President, etc., Colby University v. Village of Canandaigua (C. C.) 96 Fed. 449. Such was the nature of the right which the Eastmans in June, 1890, transferred to the Boise Waterworks Company. When that company was organized as it was under the general incorporation laws of Idaho, it found among the statutes of that state a law which must be read into its charter, and which required all corporations formed to supply water to cities or towns to furnish water to such cities or towns "to the extent of their means in case of fire or other great necessities free of charge." It was a corporation formed for the purpose described in that law. Did its possession of the rights which had been bestowed upon the Eastmans protect it from the operation of the statute? Conceding that the city still possessed, notwithstanding this statute, the right to deal with the water company as it did, and to recognize the privilege so granted by its ordinance of October 3, 1889, as absolving the company from the obligation created by the statute—a proposition which may well be questioned—it still had, as we have seen, the right at any time to revoke the privilege so granted to the Eastmans, or to impose upon the corporation new duties, as the condition of its further exercise of the right to occupy the streets for furnishing water. We hold that it did impose such new obligations by its ordinance passed in March, 1900, granting to the Artesian Hot & Cold Water Company the right to lay pipes in the streets and to collect charges for water supplied to the inhabitants, but requiring it to furnish water for city purposes free of charge. It is immaterial that this ordinance was not requested by the corporation and was never accepted by it. There was nothing to prevent the city from imposing upon the corporation the obligations which the general statute imposed upon all corporations of a like nature. That ordinance therefore defined the rights and prescribed the duties of the corporation from that time on, and had the effect to revoke any privilege which it may have theretofore enjoyed inconsistent therewith. The ordinance of March, 1900, while not the source and origin of the right of the city in the premises, was passed in compliance with section 2710. Section 2711 created the right. It entered into and became part and parcel of the corporate duties of the Artesian Hot & Cold Water Company and of the other corporations which became its successors in interest when they were formed for the purpose of furnishing water to the inhabitants of the city. It is immaterial that under the laws of Idaho such corporations are denominated "private corporations." The name by which they are called does not change their attitude toward the public, nor does it affect the nature of their rights and duties. They are none the less subject to legislative and municipal control. The reservation of the power to exercise such control was a part of the contract which they had with the state when they obtained franchises to become corporations for the purposes named in their articles. Chicago, Burlington & Quincy Railway Co.

*v.* Cutts, 94 U. S. 155, 24 L. Ed. 94; Boston Beer Co. v. Massachusetts, 97 U. S. 25, 24 L. Ed. 989.

The plaintiff in error relies on the fact that the Artesian Hot & Cold Water Company, Limited, had several and separate contracts with the city for the years 1897, 1898, and 1899, by which the company agreed to and did furnish the city water for municipal purposes, and by which the city agreed to and did pay therefor a fixed and stipulated annual compensation, and the fact that by reason of said contract the company was obliged to incur extra expenses in the sum of more than $20,000 over and above what would otherwise have been necessary; and it claims that thereby the city became obligated to continue to pay thereafter such annual compensation for the use of such water.   It must be borne in mind, however, that these contracts were made from year to year, and that they bound the city for no longer time than the period covered by each annual agreement.   The water company undertook to make the outlay necessary to carry out these contracts without any promise or stipulation of the city to continue to make the same.   It entered into the contract with full knowledge of the right of the city to cease making the same whenever it saw fit to do so, and it cannot now complain that the city has exercised that right.   None of the cases cited by the plaintiff in error sustains its contention.   The case chiefly relied upon—Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518—was a case in which the city made an exclusive contract with a water company for a period of 21 years, and gave to the company the exclusive right to use its streets to conduct water to its inhabitants.   It had no power to grant such an exclusive right, and that portion of the contract was held ultra vires; but the court held that the illegality of that part of the contract would not absolve the city from its contract to pay for the water, as it had agreed to pay, for the stipulated term of years.   The doctrine of that case can have no application to the case at bar.   Here the city has done all that it contracted to do.   It has paid for the use of the water which was furnished under its contracts.   After the expiration of those agreements it had no further contract whatever with the company.   State ex rel. v. City of Hamilton, 47 Ohio St. 52, 23 N. E. 935.

The plaintiff in error attempts to distinguish its obligations from those imposed on other companies on the ground that the water it furnishes is not taken from the public streams of the state, but is pumped at its own expense from artesian wells bored on its own lands. We find in these facts nothing to relieve the company from the obligation imposed by the statute.   It is the fact that it is a water company formed for the purpose of furnishing water to the inhabitants of a city, and that it enjoys the use of the streets of the city for that purpose, that brings it within the operation of the statute.   It is immaterial where its water is obtained—whether it pump it from artesian wells or take it from a natural stream.

It is claimed that the decision of the Supreme Court of Idaho in City of Boise v. Artesian Hot & Cold Water Co., 39 Pac. 562, is authority for the proposition that a water company not previously authorized by ordinance or by contract with the city to supply water is

under no obligation to furnish water for municipal purposes. We do not so understand the decision. The suit was in equity on a bill presented by the city of Boise to compel the Artesian Hot & Cold Water Company to furnish the city water for municipal purposes free of charge. The court denied the relief which was prayed for only on the ground that in the bill of complaint it had not been alleged either that the city had a contract with the corporation for that purpose, or had authorized the corporation by an ordinance to furnish the city with water, in compliance with the statute (section 2710), which required that "no corporation formed to supply any city or town with water must do so unless previously authorized by an ordinance of the authorities thereof or unless it is done in conformity with a contract entered into between the city or town and the corporation." The court held that the complaint must state everything necessary to enable the court to enter up the judgment prayed for, and that it must therefore inform the court of the exact condition of things between the city and the water company, as there might be a contract or ordinance which might affect the character of the decree to be entered. In the present case the court is informed of the exact relation between the city and the water company. It is advised of the fact that no contract exists, and that an ordinance has been passed granting permission to the company to furnish water to the inhabitants of the city.

The point is made that Peter Sonna enjoys the privilege of furnishing water to a certain portion of the city, and that he is not only absolved from all duty or obligation to furnish water free for municipal purposes, but water which is taken from the plaintiff in error is used to sprinkle premises in that portion of the city which is supplied by Sonna's waterworks. It is not alleged, however, that Peter Sonna has any franchise from the city. It is denied in the answer that he exercises rights or franchises under the same or like powers or privileges or franchises as those of the plaintiff in error, and it is alleged that the plaintiff alone has enjoyed the rights and privileges and franchises of supplying water to Boise City and the inhabitants thereof. No proof was introduced concerning the issues so made. Upon the pleadings there is nothing to show that Sonna enjoys a franchise from the city which gives him privileges not possessed by the plaintiff in error, or from which it may be seen that the latter is denied the equal protection of the laws.

We find no error in the ruling of the Circuit Court. Its judgment is affirmed.