OMAHA ELECTRIC LIGHT & POWER CO. v. CITY OF OMAHA et al.

(Circuit Court, D. Nebraska. July 17, 1909.)

1. CONSTITUTIONAL LAW (§ 205*)—GRANT OF RIGHT TO USE STREETS—"SPECIAL PRIVILEGE OR IMMUNITY.

A franchise or privilege granted by a city to an electric company to use its streets, not being exclusive, is not a "special privilege or immunity," prohibited by Neb. Const. art. 3, § 15.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 595; Dec. Dig. § 205.*

For other definitions, see Words and Phrases, vol. 7, p. 6586.]

2. ELECTRICITY (§ 4*)—ELECTRIC COMPANIES—FRANCHISE TO USE STREETS—DURATION.

A franchise granted by a city to an electric company to use its streets is not necessarily limited in duration to the corporate life of the company.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 1; Dec. Dig. § 4.*]

3. ELECTRICITY (§ 4*)—ELECTRIC COMPANIES—FRANCHISE TO USE STREETS—CONSTRUCTION.

A city ordinance, passed in 1884, granting to a company the right to construct and maintain in the streets poles and wires "for the purpose of transacting a general electric light business," does not confer the right to use the streets for the transmission of current for power or heating purposes; such uses being practically undeveloped and little known at that time.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 1; Dec. Dig. § 4.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CONTRACTS (§ 170\*)—CONSTRUCTION—INTERPRETATION BY PARTIES.

The interpretation given to contracts by the parties, as shown by their acts, can only be considered in construing the contract when it is ambiguous and susceptible of different meanings.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753; Dec. Dig. § 170.\*]

5. ELECTRICITY (§ 4\*)—GRANT OF RIGHT TO USE STREETS—CONSTRUCTION—ESTOPPEL.

A city, which granted the right to a company to use its streets for electric light purposes, is not estopped to deny that the grant conferred the right to use them for the transmission of current for other purposes because, with knowledge that the company was so using them, it passed general ordinances regulating such use, nor because, under an ordinance imposing a gross earnings tax on all companies furnishing electricity for lighting, heating, and power purposes, it accepted taxes from such company based on its income from electricity furnished for power as well as lighting purposes.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 1; Dec. Dig. § 4.\*]

In Equity.

W. W. Morsman, for plaintiff.

Harry E. Burnam, I. J. Dunn, and John A. Rine, for defendants.

W. H. MUNGER, District Judge. In 1884 the city of Omaha was a city of the first class, governed by a legislative charter which gave to the corporate authorities of the city full power, control, and authority over the streets and alleys of the city. In December, 1884, the city council of said city passed an ordinance, which was duly approved by the acting mayor of the city, which ordinance gave to the New Omaha Thompson-Houston Electric Light Company, or assigns, the right to erect and maintain poles and wires, with all the appurtenances thereto, upon or over the streets, alleys, and public grounds of said city, "for the purpose of transacting a general electric light business," under such reasonable rules and regulations as might be provided by ordinance. The provisions of the ordinance were accepted by the New Omaha Thompson-Houston Electric Light Company, and an electric light plant established in the city of Omaha; the electrical current therefor being transmitted over wires strung upon poles erected upon the various streets and alleys within the city. The application of electric power to stationary machinery was not much understood or developed in 1884, and for several years thereafter. As appliances were invented for such purposes, they were used by said electric light company.

Ordinances have subsequently been passed by the city, of a general nature, requiring that all companies using or desiring to use electricity for light, power, and heating purposes should be governed by certain regulations under the direction of the city electrician. A subsequent ordinance was passed, requiring all companies furnishing electricity for lighting, heating, and power purposes to pay a certain percentage of gross receipts to the city. In 1903, shortly before the termination of the corporate existence of said New Omaha Thompson-Houston Electric Light Company, it assigned all its property and rights acquired by virtue of said ordinance of 1884 to complainant,

and for the years 1902, 1903, 1904, 1905, and 1906 complainant paid to the city treasurer of the city of Omaha the percentage upon its gross receipts for electrical energy furnished by it for lighting and power purposes, and complainant and its predecessor have invested a large sum of money in producing the electrical current for power and heat, in addition to what would have been required for lighting purposes only.

The city has also by ordinance required all companies transmitting electricity for heat, light, and power purposes to place within a certain prescribed district within the city all wires so used in conduits under the ground. In May, 1908, the city council, by resolution approved by the mayor, directed the city electrician to disconnect, or cause to be disconnected, on or before July 1, 1908, all wires leading from the conduits or poles of the Omaha Electric Light & Power Company, transmitting electricity to private persons or premises, to be used for heat or power, and to take such steps as would prevent said Omaha Electric Light & Power Company from furnishing or transmitting from the conduits or wires electricity to private persons or premises for heat or power purposes. The city electrician notified complainant of his purpose to carry out the provisions of said resolution. Thereupon complainant instituted this action to enjoin the city and said Michaelson, as city electrician, from enforcing the provisions of said resolution, or otherwise interfering with complainant in its business of furnishing, under the provisions of the ordinance of 1884, electricity for light, heat, and power purposes.

There are no controverted questions of fact, the case presenting simply questions of law. I think the city had authority, in 1884, under the general power given it over the streets and alleys within the city, to pass the ordinance in question, granting to the New Omaha Thompson-Houston Electric Light Company the privilege given by said ordinance. The privilege given by said ordinance, not being exclusive, was not a special privilege or immunity, within the meaning of section 15 of article 3 of the Constitution of the state. City of Plattsmouth v. Nebraska Telephone Co., 80 Neb. 460, 114 N. W. 588, 14 L. R. A. (N. S.) 654; Omaha Water Co. v. City of Omaha, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736. Nor was the grant to the New Omaha Thompson-Houston Electric Light Company, or assigns, limited in duration to the corporate life of said company. Detroit Citizens' Street Ry. Co. v. City of Detroit, 64 Fed. 628, 12 C. C. A. 365, 26 L. R. A. 667; City of Detroit v. Citizens' St. R. Co., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592. The ordinance of 1884 was limited in its terms to a "general electric light business," and did not grant to the company authority for the transmission of an electrical current for purposes other than lighting. Chicago General Street Ry. Co. v. Ellicott (C. C.) 88 Fed. 941; City of Toledo v. Western Union Tel. Co., 107 Fed. 10, 46 C. C. A. 111, 52 L. R. A. 730. See, also, section 907, 3 Abbott on Municipal Corporations.

It is, however, urged on the part of complainant that the ordinance in question was a contract; that the parties by their acts and conduct have construed the ordinance as giving such authority, and the con-

struction so given by the parties should be adopted by the court. The rule, however, I think, is well settled that the interpretation given contracts by parties, as shown by their acts, can only be considered when the contract is ambiguous and susceptible of different meanings. Russell v. Young, 94 Fed. 45, 36 C. C. A. 71; Railroad Co. v. Trimble, 10 Wall. 367–377, 19 L. Ed. 948; Delaware Securities Co. v. Metropolitan Trust Co. (C. C.) 146 Fed. 600. The ordinance in question is not to my mind ambiguous, but plain and specific, limiting the grant to general electric light purposes. In construing contracts and ordinances of this nature, the general rule is that they should be construed strictly in favor of the public, yet they should receive a just and rational interpretation and the court endeavor to ascertain from the language used the true intent and meaning of the parties. To do this we should place ourselves back to the time of the passage of the ordinance in question, consider the then conditions, and ascertain what the city council at that time intended, and give the ordinance that construction, and not such a construction as "private interests may now desire, nor such as public interest, after the lapse of years, may desire."

The evidence shows, as before stated, that at the time the city council acted in 1884 the application of electric power to stationary machinery was not much understood or developed, and was not for several years thereafter. I cannot think that, in granting in 1884 the right to transmit electricity through the streets and alleys of the city for general electric lighting purposes, it was in the mind of the city council, or any of the parties, or that they for a moment contemplated or intended, that the ordinance in question granted the right to transmit an electric current for all purposes and uses to which the inventive mind might in the future apply it, even though such new uses might be equally beneficial to the public. Had such been the intention, the word "light" would have been omitted. The words "a general electric light business," as used in the ordinance, show clearly an intention to limit the use to which the electric current was to be applied.

No representations or conduct upon the part of the city are shown which would constitute an estoppel. Whether the ordinance granted authority to transmit electricity for other than lighting purposes was as well known to complainant and its predecessors as to the city, and the essential elements to constitute estoppel are not shown. Crary v. Dye, 208 U. S. 515, 28 Sup. Ct. 360, 52 L. Ed. 595. Nor do I think the payment by complainant, and the receipt by the city, of a percentage upon complainant's gross income, derived from the sale of electricity for power as well as lighting purposes, constitutes a valid ratification of the assumed authority of complainant. The law is, I think, fundamental that a power required to be given by a city by ordinance can only be modified or enlarged by ordinance. The payments made by complainant were merely voluntary payments, made with full knowledge of all facts and its legal rights, and upon no representations or conduct by the city which estops it from denying that complainant's rights are greater than those expressly stated in the ordinance of 1884.

The conclusion above reached renders it unnecessary to determine whether or not the ordinance of 1884, containing no time limit, consti-

tuted a perpetual, irrevocable contract, or, as said in Boise City Artesian Hot & Cold Water Co. v. Boise City, 123 Fed. 232, 59 C. C. A. 236, was a mere privilege, revocable at will.

The case will be dismissed for want of equity.